310

## State v. Brown
*[Cite as 8 AOA 310]*

*Case No. 87-C-64*
*Columbiana County, (7th)*
*Decided November 1, 1990*

*Robert Herron, Prosecuting Attorney and Richard A. Luther, Asst. Prosecuting Attorney, Columbiana County Courthouse, 105 So. Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee.*

*Thomas D. Dawson, Asst. Public Defender, 223 North Market Street, Lisbon, Ohio 44432, for Defendant-Appellant.*

O'NEILL, P.J.

Following a jury trial, the defendant-appellant was found guilty of sexual battery in violation of R.C. 2907.03(A)(5). On September 17, 1987, he was sentenced to a definite term of two years incarceration.

We must first approach a motion to dismiss filed by the prosecution on April 12, 1990. The movant points out that, on January 13, 1989, the defendant-appellant was released from prison. It is contended that, in view of appellant's release from prison, his appeal is moot. In support of this argument, the prosecution refers the court to the case of *State v. Berndt* (1987), 29 Ohio St. 3d 3. By way of dicta, the *Berndt* court stated:

"This court has held that '[w]here a defendant, convicted of a criminal offense, has voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an

inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights form such judgment or conviction.' *State v. Wilson* (1975), 41 Ohio St. 2d 236, ***." (p. 4).

The *Wilson* court, by way of dicta, placed a burden upon the appellant wherein the *Wilson* court stated "*** appellant has failed to show that he has a substantial stake in the judgment of conviction which survives the satisfaction of the judgment imposed on him." *State v. Wilson* (1975), 41 Ohio St. 2d 236, 237. In referring to the *Wilson* case, the *Berndt* court concluded that:

"The burden of presenting evidence that he has such a 'substantial stake in the judgment of conviction' is upon the defendant." *State v. Berndt* (1987), 29 Ohio St. 3d 3, 4 .

The *Berndt* court then went on to state that:

"A thorough review of the record reveals that appellee has offered no such evidence. Nowhere can there be found any reference to a claim of collateral disability or loss of civil rights resulting from his conviction." (p. 4).

The appellant was served with the State's motion to dismiss on April 12, 1990. There has been no response filed to this motion.

We are, however, reluctant to find this appeal moot in view of the error which occurred during the trial and which error has been classified by the Supreme Court as being egregious error. It does not stretch the imagination to infer that a conviction of a crime involving sexual assault certainly gives rise to many collateral civil disabilities and liabilities.

Accordingly, the motion to dismiss is denied.

During the trial of this case, the State called, as a witness, Linda M. Morris, a social worker with the Columbiana County Department of Human Services. It was established, by direct examination, that Linda Morris had been employed by the Department of Human Services for a period of 16 years and that, as a part of her responsibilities, was the investigation of the I sexual abuse of children (Tr. 63). Linda Morris had interviewed the victim involved in this case. Under redirect examination, the following dialogue took place between the prosecutor and Linda Morris:

"Q. Linda, in your opinion after these 16 years of interviewing children who have been

sexually abused, do you think Susan Marie Herman was telling you the truth?

"A. I do.

"Q. Is there any doubt in your mind that she was telling you the truth?

"A . There was never any doubt." (Tr. 83-84).

The prosecutor went on with further redirect examination:

"Q. Linda, you have heard Ms. Bica question you here today about fabrication. You testified earlier and people prior to you have testified that there was some difficulty in the marriage between Anita Brown and Claude Brown?

"A. Yes

"Q. After--based on your years of experience in investigating these cases and based on the facts you had before you with regard to Susan Herman and the incident that occurred of July 14th, do you believe that Susan Herman fabricated this story in order to somehow get even with her father for some wrong, whether it be imagined or otherwise?

"A. You're talking about her stepfather?

"Q. Stepfather, excuse me. Yes, Claude Brown.

"A. I do not believe the child told this to cause more marital problems or to get even with Mr. Brown. I believe she is telling the truth." (Tr. 84-85).

Subsequently, the State called Barbara Padgett as a witness. She was qualified as being a psychotherapist employed by the Columbiana County Mental Health Center. Ms. Padgett testified:

"My particular field of expertise is with children and I also do a lot of work with women who have been rape victims. I do a lot of work with people who have been sexually imposed on at one time or another. I just do general psychotherapy, counseling work." (Tr. 104-105).

As a part of the direct examination of this witness, the following dialogue took place between the prosecutor and the witness?

"Q. And based on your experience with children relating these incidents to you and your knowledge of when they were fabricating or not fabricating and, once again, based on Susan's presentation of the facts to you, what's your opinion as to whether or not Susan was telling the truth?

"A. I believe that Susan told me the truth. If anything, Susan would be more likely to withhold information out of embarrassment than to fabricate information. It was very difficult for her to tell me about it." (Tr. 110).

The Ohio Supreme Court has severely criticized the use of such an opinion in the direct testimony of experts. In the syllabus of *State v. Boston* (1989), 46 Ohio St. 3d 108, the Supreme Court stated:

"An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant."

By way of dicta, the court stated "We have little difficulty in finding that the admission of this testimony was not only improper--it was egregious, prejudicial and constitutes reversible error." *Boston, Supra,* at page 128. This type of testimony had also received the attention of the court in the case of *State v. Eastham* (1988), 39 Ohio St. 3d 307. Justice Brown, in a concurring opinion in the *Eastham* case, addressing the issue of an opinion relative to "veracity", concluded that such an opinion acts "*** as a litmus test of the key issue in the case and infringed upon the role of the fact finder, who is charged with making determinations of veracity and credibility." (p. 312).

At the time that these questions, relative to the accusing witnesses' veracity were asked and answered, there was no objection raised thereto. However, in view of the description of this error, by the Supreme Court, as being egregious, we find this error to be plain error pursuant to Cr. R. 52(B), which states:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Accordingly, the first assignment of error raised by the appellant is found to be meritorious and a basis for vacation of the final judgment of the trial court.

In view of our disposition of the first assignment of error, we find it unnecessary to consider the second assignment of error which complains that the defendant-appellant did not have effective assistance of counsel.

The final judgment of the trial court is vacated and this cause is remanded for proceedings according to law.

DONOFRIO, J., and COX, J., concur.